FRIEDMAN, District Judge,
dissenting:
Defendant Jose Medina-Carrasco entered into a plea agreement with the government under which he agreed to waive his appellate rights “provided [he] receives a sentence in accordance with th[e] ... plea agreement.” This court previously has considered this same (or functionally equivalent) plea agreement language, from the same United States Attorney’s Office, in eight unpublished opinions.[1] In at least five of those cases, the court held that this caveat is ambiguous and thus renders the waiver unenforceable absent sufficient clarification from the district court or magistrate judge.[2] Because I agree that this ambiguous waiver is unenforceable, and because I also conclude that the district court plainly erred in applying a “crime of violence” enhancement in calculating Medina-Carrasco’s sentencing guideline range, I respectfully dissent.
I. Appeal Watveks
I begin by acknowledging that this court and every other federal court of appeals to have considered the issue have held that appeal waivers are valid:- If a defendant may waive his constitutional rights as part of a plea agreement, they reason, it follows that a defendant may waive statutory rights to appeal and to collaterally attack a conviction or sentence. See, e.g., United States v. Navarro-Botello, 912 F.2d 318, 321 (9th Cir.1990); United States v. Wiggins, 905 F.2d 51, 53-54 (4th Cir.1990). Those decisions have been criticized by trial judges and commentators on a variety of grounds.[3] Primary among them is the *1212 reality that giving up the right to trial, to confront witnesses at trial, and to preserve the privilege against self-incrimination are all known trial rights that necessarily are forfeited by the very act of pleading guilty instead of proceeding to trial. The defendant consequently knows precisely what he or she is giving up in exchange for the benefits of the guilty plea at the very moment the plea is entered — a trial and the constitutional rights that accompany it.
Sentencing, however, does not occur contemporaneously with the plea and waiver. It is a future event, and the mistakes from which one might have reason to appeal have not yet occurred at the time a defendant waives the right to appeal or collaterally attack the plea or sentencing proceedings. A defendant cannot know what he or she has given up by waiving the right to appeal until after the judge and counsel have reviewed a yet-to-be-prepared presentence investigation report, after the judge has considered other information not known to the defendant at the time of the plea, and after the judge has actually imposed sentence. By then it is too late, no matter how disproportionate the sentence or how egregious the procedural or substantive errors committed by the sentencing judge or the defendant’s own counsel. It is hard to see how a defendant at the plea hearing can ever knowingly and intelligently — that is, with “a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon it,” Moran v. Burbine, 475 U.S. 412, 422, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)-waive the right to appeal or collaterally attack a sentence that has not yet been imposed. Such prospective waivers in anticipation of unknown future events are inherently unknowing and unintelligent.[4]
Putting these concerns aside, the courts of appeals (as noted) are unanimous in recognizing the presumptive validity of appeal waivers. Each one of those courts, however, has done so with the proviso that such waivers must be rigorously assessed to assure that they have been entered knowingly, intelligently, and voluntarily. Furthermore, the courts have made clear that the question is not one of form but of substance: Did the defendant in fact knowingly, intelligently, and voluntarily waive the right to appeal or to collaterally attack a conviction or sentence — a determination which must be based upon the specific facts and circumstances presented by the particular case, including the defendant’s “background, experience, and conduct.” United States v. Martinez, 143 F.3d 1266, 1269 (9th Cir.1998) (quoting Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). And as with waivers of constitutional rights, “a heavy burden” rests on the government to demonstrate by a preponderance of the evidence that the waiver was voluntary and that the defendant knowingly and intelligently waived these important statutory rights. See Berghuis v. Thompkins, 560 U.S. 370, 383-84, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010); United States v. Garibay, 143 F.3d 534, 536-37 (9th Cir.1998); see also United States v. Andis, 333 F.3d 886, 890 (8th Cir.2003).
II. This Waivee is UNENFORCEABLE
Under this court’s jurisprudence, Medina-Carraseo’s “waiver of his appellate *1213 rights is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly[,] [intelligently,] and voluntarily made.” United States v. Charles, 581 F.3d 927, 931 (9th Cir.2009) (quoting United States v. Jeronimo, 398 F.3d 1149, 1154 (9th Cir.2005), overruled on other grounds by United States v. Castillo, 496 F.3d 947, 957 (9th Cir.2007) (en banc)). The court must “determine what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty,” United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir.1993) (footnote omitted), and then that he voluntarily and knowingly waived his rights as he understood them, see Charles, 581 F.3d at 932 (Because defendant “reasonably could have believed that he retained his right to appeal his sentence to the extent that the district court determined he was a career offender,” “[defendant] did not waive his right to appeal [that] determination”). “The drafter of the plea agreement, typically the government, is responsible for any lack of clarity such that ambiguities are construed in favor of the defendant.” Charles, 581 F.3d at 931.
Section IV of the plea agreement here states that Medina-Carrasco waives his right to appeal “provided [he] receives a sentence in accordance with this fast-track plea agreement.” As the majority notes, Medina-Carrasco argues that the “in accordance with” caveat is susceptible to two interpretations. Op. at 1209. First, the waiver is effective so long as Medina-Car-rasco received a sentence in any of the eighteen different sentencing ranges listed in the sentencing grid contained in the plea agreement, because that is what he agreed to. This is the interpretation adopted by the majority. Op. at 1209. Or, second, the waiver is effective so long as Medina-Carrasco received a sentence based on a properly calculated sentencing guideline range, id. at 1209-10, that is, so long as it does not exceed 87 months. The majority rejects this alternative interpretation as implausible for two reasons: (1) it would “render meaningless the express waiver of the right to challenge ‘any sentencing guideline determinations’ contrary to basic principles of contract interpretation”; and (2) to allow an allegedly incorrect guidelines calculation to render a waiver inapplicable “would nullify the waiver based on the very sort of claim it was intended to waive.” Op. at 1210.[5]
I disagree with the majority’s view that the second, alternative interpretation is implausible. In my view, both interpreta *1214 tions posited by Medina-Carrasco are plausible. And if both are plausible,’ the waiver is ambiguous. It follows that Medina-Carrasco did not knowingly and intelligently waive his right to appeal the district court’s determination of whether his prior conviction qualified as a “crime of violence” under U.S.S.G. 2L1.2(b)(l)(A)(ii). See Charles, 581 F.3d at 931-32.
As noted, the majority rejects the alternative interpretation for two reasons. In my opinion, the first reason is incorrect because the waiver of the right to appeal “any sentencing guideline determinations” is not “render[ed] meaningless” under that alternative interpretation. The basic principles of contract interpretation invoked by the majority dictate that the contract “must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations.” Wapato Heritage, L.L.C. v. United States, 637 F.3d 1033, 1039 (9th Cir.2011) (internal quotation omitted). When read together with the alternative interpretation of the caveat “in accordance with,” that portion of the waiver means “any correct sentencing guideline determinations.” Although it would bar fewer appeals than the government would prefer, the waiver would be far from meaningless.
As for the majority’s second reason— that this interpretation counterintuitively allows appeals on claims that ordinarily would be waived by plea agreement waivers — -I agree. But the fact that the government almost certainly' did not intend to draft a seemingly self-defeating waiver is irrelevant. Our inquiry must focus on the literal terms of the plea agreement, a contract drafted by the government, and what Medina-Carrasco “reasonably understood to be the terms of the agreement when he pleaded guilty.” De la Fuente, 8 F.3d at 1337; see also Charles, 581 F.3d at 931; United States v. Cope, 527 F.3d 944, 950 (9th Cir.2008) (“The drafter of the plea agreement — usually the government ...— bears responsibility for any lack of clarity, such that [ajmbiguities are ... construed in favor of the defendant, ... and the government is ordinarily held to the literal terms of the plea agreement it made.”) (quoting United States v. Transfiguracion, 442 F.3d 1222, 1228 (9th Cir.2006)) (internal quotation marks and citations omitted).
Unlike the majority, I therefore find both interpretations of the “in accordance with language” plausible. And because Medina-Carrasco could have reasonably understood the waiver to mean either of the two plausible interpretations or, frankly, not understood what he was waiving at all, the plea agreement was ambiguous and his waiver of appellate rights was not knowing and intelligent. Absent any clarification from the magistrate judge that eliminated the ambiguity of the written agreement, the waiver of appellate rights is unenforceable. See United States v. Clark, 218 F.3d 1092, 1095 (9th Cir.2000) (“If ... a term of a plea agreement is not clear on its face, we look to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement. If, after we have examined the extrinsic evidence, we still find ambiguity regarding what the parties reasonably understood to be the terms of the agreement, then the government ‘ordinarily must bear responsibility for any lack of clarity.’ ”) (quoting De la Fuente, 8 F.3d at 1338); United States v. Baramdyka, 95 F.3d 840, 843 (9th Cir.1996) (“This court looks into the circumstances surrounding the entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily.”).
In that regard, I respectfully disagree with the majority’s conclusion that, even assuming the “in accordance with” caveat in the plea agreement was ambiguous— and I think it is — the plea colloquy saves *1215 the waiver. Op. at 1210. While the magistrate judge asked Medina-Carrasco a number of questions regarding the plea agreement and his constitutional and statutory rights, only one concerned the waiver of his right to appeal: “[D]o you understand that, according to your written plea agreement, you are giving up your right to appeal your conviction and sentence?” The magistrate judge, however, did not explain the parameters of the waiver or the circumstances in which it would apply. He failed to clear up or even address the ambiguity as to the meaning of the phrase “in accordance with.” And the representative of the same United States Attorney’s Office that had been admonished by this court on several prior occasions in similar situations, see supra at 1207, failed to urge him to do so.
Moreover, the single question posed by the magistrate judge provided incorrect information. Even the majority acknowledges that Medina-Carrasco did not waive every issue he might appeal from his conviction and sentence — at a bare minimum, under the majority’s interpretation, he reserved the right to appeal from a sentence outside the ranges listed in the agreement. Op. at 1209-10. And despite the unequivocal language of the plea agreement, he preserved the right to raise on collateral attack a claim of ineffective assistance of counsel at the plea or sentencing and certain other constitutional violations that infected either. See Washington v. Lampert, 422 F.3d 864, 870-71 (9th Cir.2005) (holding that plea agreement that waives right to file federal habeas petition is unenforceable with respect to ineffective assistance of counsel claim that challenges voluntariness of waiver); see also United States v. Adams, 780 F.3d 1182, 1183-84 (D.C.Cir.2015); United States v. Hahn, 359 F.3d 1315, 1327 (10th Cir.2004); Andis, 333 F.3d at 891. The plea colloquy therefore failed to eliminate the ambiguity of the written plea agreement and to clarify that the caveat meant only that Medina-Carrasco could appeal if the sentence was outside the broad 4 to 87 months range of imprisonment in the agreement. In my view, the waiver of appellate rights is unenforceable, and I would reach the merits of Medina-Carrasco’s appeal.
There is yet another, separate reason to conclude that Medina-Carrasco did not understand the consequences of his plea sufficiently to knowingly and intelligently waive his right to appeal. .Like the majority, I, too, am concerned about the lack of clarity in the “algebraic algorithm” of the plea agreement. Op. at 1209 n. 1. In my view, however, the lack of clarity is fatal to the validity of the appeal waiver, independent of the ambiguity addressed above. While ostensibly labeled a Rule 11(c)(1)(C) plea agreement, the grid presented in the plea agreement contains a mind-numbing 18 different potential guideline sentencing ranges, reached by combining three possible offense levels with six possible criminal history categories, which apparently reflect reductions for acceptance of responsibility and the fast track program, without so stating. The plea agreement contains no explanation as to how the district court would determine which range or criminal history category would apply. The potential sentences range from 4 months to 87 months of imprisonment, depending on what adjustments, offense characteristics, and prior offenses are counted and whether Medina-Carrasco was or was not previously convicted of a crime of violence. The majority states that “the - typical person unfamiliar with the intricacies of the federal sentencing guidelines would be confused by the grid at first,” Op. at 1209 n. 1, but finds comfort in the fact that this Spanish-speaking defendant affirmed through an interpreter that his lawyer had explained the plea agreement to him and that the magistrate judge “explained in general how the grid worked,” id. In my view, the *1216 plea agreement drafted by the government is unacceptable — certainly I would never accept a plea based on this document — and the magistrate judge’s explanation woefully failed to clarify it. Medina-Carrasco’s consent therefore could not have been knowing and intelligent.
III. CRIME OP VIOLENCE: THE DISTRICT Couet Plainly Erred
The district court concluded that Medina-Carrasco’s prior aggravated assault conviction in Arizona categorically qualified as a “crime of violence” under Section 2L1.2(b)(l)(A)(ii) of the Federal Sentencing Guidelines and therefore applied a 16-level enhancement. The definition of “crime of violence” includes the crime of aggravated assault under state law or “any other offense that has as an element the use, attempted use, or threatened use of physical force” against another. U.S.S.G. § 2L1.2, cmt. n.l; see United States v. Marcia-Acosta, 780 F.3d 1244, 1248 (9th Cir.2015). Because Medina-Carrasco failed to object to the 16-level enhancement, this court may only reverse if it finds plain error.[6]
The government and Medina-Carrasco agree that A.R.S. § 13-203(A) is divisible under the “modified categorical approach” announced by the Supreme Court in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). See also Descamps v. United States, - U.S. -, 133 S.Ct. 2276, 2283-85, 186 L.Ed.2d 438 (2013). They also agree that Medina-Carrasco specifically was convicted under A.R.S. § 13-203(A)(3), a subsection of the statute which requires “[kjnowingly touching another person with the intent to injure, insult or provoke such person.” The government, however, contends that subsection (A)(3) is further divisible, and that Medina-Carrasco was convicted under the “intent to injure” provision of that subsection. The government is wrong.
In this case, the jury would not have been instructed to decide whether it found Medina-Carrasco guilty of touching with the intent to injure because that is not a separate statutory element under subsection (A)(3). See Rendon v. Holder, 764 F.3d 1077, 1086 (9th Cir.2014) (“Only when state law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the dis-junctively worded statute are we able to conclude that the statute contains alternative elements and not alternative means.”) (emphasis in original). All that would have been required of the jury was to determine unanimously whether it found that Medina-Carrasco’s conduct violated subsection (A)(3); some jurors could have found intent to injure, others intent to insult, and still others intent to provoke, and still have rendered a unanimous verdict. Rendon, 764 F.3d at 1085 (“As long as the defendant’s conduct violates the statute, the jury can disagree as to how, and a later sentencing court cannot conclude that the jury in fact agreed on the particular means of commission.”).
*1217 Under Johnson v. United States, 559 U.S. 133, 138-40, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), “touching” does not qualify as “the use, attempted use, or threatened use of physical force,” and Medina-Carrasco’s prior conviction under subsection (A)(3) therefore does not qualify as a “crime of violence” under Section 2L1.2(b)(l)(A)(ii). Accord United States v. Ossana, 638 F.3d 895, 900 (8th Cir.2011) (holding that a conviction under A.R.S. § 13-203(A)(3) “would not qualify as a crime of violence” because “such contact does not qualify as the use of physical force because it is not violent force”) (citing Johnson, 559 U.S. at 138-39, 130 S.Ct. 1265). Adding 16 additional offense levels when there was no crime of violence quadrupled Medina-Carrasco’s sentencing guideline range from 12 to 18 months of imprisonment to 57 to 71 months of imprisonment. This was plain error.
I therefore would reverse the sentence and remand for resentencing.

. United States v. Salmeron-Ozuna, 597 Fed.Appx. 454 (9th Cir.2015) (unpublished); United States v. Hernandez-Lopez, 594 Fed.Appx. 385 (9th Cir.2015) (unpublished); United States v. Banos-Mejia, 588 Fed.Appx. 522 (9th Cir.2014) (unpublished); United States v. Perez-Mancilla, 573 Fed.Appx. 615 (9th Cir.2014) (unpublished); United States v. Gonzales-Garcia, 541 Fed.Appx. 764 (9th Cir.2013) (unpublished); United States v. Rodriguez, 540 Fed.Appx. 662 (9th Cir.2013) (unpublished); United States v. Baltazar-Neri, 540 Fed.Appx. 630 (9th Cir.2013) (unpublished); United States v. Aguilar-Balbuena, 475 Fed.Appx. 222 (9th Cir.2012) (unpublished).

. Banos-Mejia, 588 Fed.Appx. at 523; Perez-Mancilla, 573 Fed.Appx. at 616; Gonzales-Garcia, 541 Fed.Appx. at 765; Rodriguez, 540 Fed.Appx. at 662; Aguilar-Balbuena, 475 Fed.Appx. at 223.
In a sixth case, Salmeron-Ozuna, the court did not specifically hold that the caveat was ambiguous, but stated that "[w]e are unpersuaded that the appeal waiver is ambiguous in light of the clarifying colloquy at the change of plea hearing." 597 Fed.Appx. at 454 (emphasis added). In only one of the eight cases, United States v. Hernandez-Lopez, 594 Fed.Appx. at 385, did the panel adopt the position taken by the majority in this case.

. See, e.g., United States v. Melancon, 972 F.2d 566, 571-73 (5th Cir.1992) (Judge Parker, concurring specially); United States v. Johnson, 992 F.Supp. 437, 438-40 (D.D.C.1997) (Judge Harold Greene); United States v. Raynor, 989 F.Supp. 43, 44-49 (D.D.C.1997) (Judge Friedman); United States v. Perez, 46 F.Supp.2d 59, 64-72 (D.Mass.1999) (Judge Gertner), abrogated by United States v. Teeter, 257 F.3d 14 (1st Cir.2001); United States v. Vanderwerff, No. 12-CR-0069, 2012 WL 2514933, at *5 (D.Colo. June 28, 2012) (Judge Kane), rev’d and remanded, 788 F.3d 1266 (10th Cir.2015); Robert K. Calhoun, Waiver of the Right to Appeal, 23 Hastings Const. L.Q. 127 (1995); Alexandra W. Reimelt, Note, An Unjust Bargain: Plea Bargains and Waiver of the Right to Appeal, 51 B.C. L. REV. 871 (2010); Nancy J. King, Plea Bargains that Waive Claims of Ineffective Assistance — Waiving Padilla and Frye, 51 Duq. L.Rev. 647 (2013); Andrew Dean, Note, Challenging Ap *1212 peal Waivers, 61 Buff. L.Rev. 1191 (2013); Kevin Bennardo, Post-Sentencing Appellate Waivers, 48 U. Mich. J.L. Reform. 347 (2015).

. Nor can appeal waivers be truly voluntary when one contracting party — the government — has such a great advantage in bargaining power because the precise charge or charges to be brought and the resulting advisory Guideline sentencing range are totally up to the prosecutor. It is illusory to suggest that the defendant has any real bargaining power in this context, any free and deliberate choice.

. The majority’s rejection of this alternative interpretation as implausible is troublesome in light of the fact that a panel of this court seemingly held the exact opposite in United States v. Baltazar-Neri, 540 Fed.Appx. at 631, an unpublished opinion that counsel were directed to address in their briefs by this court's order of June 18, 2014. In Baltazar-Neri, the court confronted a functionally equivalent caveat requiring the sentence to be "consistent with” the plea agreement. Id. Like Medina-Carrasco, the defendant there challenged a 16-level sentencing enhancement for a crime of violence under the same sentencing guideline at issue here. The government conceded that the enhancement was incorrectly applied because the defendant had never been convicted of a crime of violence, but contended that the defendant had waived his right to appeal nevertheless. Id. The defendant urged the court to adopt the interpretation advanced by Medina-Carrasco in this case — that his sentence was not "consistent with" the plea agreement because the sentencing güideline range was incorrectly calculated — and the court explicitly did so, presumably considering it plausible. Id. The court said: "The sixteen-level enhancement is ‘consistent’ with the plea agreement only if [the defendant] was previously convicted of burglary of a dwelling,” which he was not, and "conclude[d] that [the defendant] did not unambiguously waive his right to appeal.” Id.

. Although Medina-Carrasco conceded at sentencing that the enhancement applied, he did not thereby waive his right to challenge the sentence. There is no evidence that Medina-Carrasco made a tactical decision not to challenge the probation office's (incorrect) initial determination that hjs prior conviction qualified as a "crime of violence.” See United States v. Jimenez, 258 F.3d 1120, 1124 (9th Cir.2001) (holding that a defendant who conceded that the PSR correctly applied the Guidelines did not waive his right to challenge his sentence where there was no evidence that he considered objecting but for "some tactical or other reason” rejected the idea); see id. at 1124 (court’s legal determinations "are not immunized from appellate review simply because a defendant, present at a hearing where that determination is made, mistakenly agrees with the court.”).